UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHELE WEISS,

                                        Petitioner,

                                                        9:13-cv-00419

v.

                                                        (GLS/TWD)

SUPERINTENDENT,

                                        Respondent.
_____

APPEARANCES:                              OF COUNSEL:

MICHELE WEISS
Petitioner *pro se*
1122 Windy Hill Road
Harker Heights, Texas 76548


HON. ERIC T. SCHNEIDERMAN              LISA E. FLEISCHMANN, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Counsel for Respondent
120 Broadway
New York, New York 10271


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge


## REPORT AND RECOMMENDATION


## I.      INTRODUCTION

         This matter has been referred to the undersigned for Report and Recommendation,

pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c), by the

Hon. Gary L. Sharpe, Senior United States District Judge.  Presently before this Court is the

timely *pro se* petition of Petitioner Michelle Weiss, seeking a writ of habeas corpus pursuant to

28 U.S.C. § 2254. (Dkt. No. 1.) Petitioner's state custody arises from a judgment of conviction entered on February 8, 2011, following an October 2010 jury trial in Broome County Court, the Hon. Donald F. Cerio, Jr., Acting Broome County Court Judge, presiding, on two counts of perjury in the first degree in violation of New York Penal Law ("Penal Law") § 210.15. *Id.* at 1.[1] At sentencing, the County Court declined to sentence Petitioner as a second felony offender,[2] and Petitioner was sentenced to two concurrent five-year terms of probation. (Dkt. No. 15-2 at 172.)

Petitioner pursued a counseled appeal to the Appellate Division, Third Department challenging her judgment of conviction for perjury. (Dkt. No. 15-1.) The People appealed from the County Court's decision not to sentence Petitioner as a second felony offender. (Dkt. No. 15-5.) On October 18, 2012, the Appellate Division modified Petitioner's judgment of conviction only insofar as it vacated Petitioner's sentence and remitted the matter to the County Court for resentencing as a second felony offender. *People v. Weiss*, 952 N.Y.S.2d 637 (3d Dep't 2012). Petitioner's application for leave to appeal to the New York Court of Appeals was denied. *People v. Weiss*, 960 N.Y.S.2d 358 (Table) (2013). On February 14, 2013, Petitioner was resentenced as a second felony offender to serve an indeterminate sentence of two to four years in prison. (Dkt. No. 1 at 1.)

Liberally construing her petition, Petitioner claims she should not have been tried and convicted for first degree perjury, nor sentenced as a second felony offender, because the People

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[2] On May 25, 2007, Petitioner was convicted in Broome County Court for the felony-grade crime of attempted bribing of a witness in violation of Penal Law § 215.00, a Class E Felony. (Dkt. No. 15-2 at 10.)

breached the terms of the 2007 plea agreement.  (Dkt. No. 1.)  For the reasons that follow, the Court recommends dismissing the petition.

## II.  RELEVANT BACKGROUND

### A.  The 2007 Conviction

#### 1.  The Football Incident

On October 16, 2005, while Petitioner and her ex-husband, Brian Jeker ("Jeker") were involved in a contested child custody dispute, Petitioner claimed Jeker assaulted her as she was leaving a "pee-wee" football game in the Town of Main, Broome County.  (Dkt. No. 15-2 at 75.) Local police responded to the incident, and Petitioner received treatment for her injuries.  (Dkt. No. 15-3 at 18.)  Two witnesses, Megan Schmid ("Schmid") and Stephanie Murphy ("Murphy"), provided sworn statements to the police describing Jeker as the assailant.  *Id.* at 75.  Jeker was charged with assault but before his trial, Schmid and Murphy recanted their statements that Jeker had assaulted Petitioner.  *Id.*

The Appellate Division summarized the relevant facts:

> In so doing, Schmid explained to the prosecutor that the injuries [Petitioner] suffered, rather than being caused by Jerker, were the result of a planned and consensual attack against [Petitioner].  In plotting the assault, [Petitioner] met Murphy through a mutual acquaintance, Kevin Hyde ("Hyde") and then Petitioner, Murphy, and Schmid met at a restaurant where [Petitioner] offered Murphy and Schmid $500 to falsely report that Jeker caused her injuries. As part of the plot, [Petitioner] was attacked by a neighbor of Murphy and Schmid, whom [Petitioner] had paid $50, and self inflicted some of her injuries with a razor blade."

*Weiss*, 952 N.Y.S.2d at 639.

### 2. Bribing of a Witness

In February 2006, Petitioner was arrested for attempting to bribe Murphy into re-adopting her initial statement, *i.e.*, Jeker assaulted Petitioner at the October 16, 2005, football game. (Dkt. No. 15-5 at 7-8.) On August 23, 2006, Petitioner was indicted by a Broome County grand jury for attempted bribing of a witness in violation of Penal Law § 215.00 (Indictment Number 06-514). *Id.*

### 3. The Guilty Plea

On May 25, 2007, Petitioner appeared in Broome County Court before the Hon. Patrick H. Mathews, County Court Judge. (Dkt. No. 15-5 at 22.) Represented by Michael C. Farkas, Esq. ("Farkas"), Petitioner pleaded guilty to the crime of attempted bribing of a witness, a Class E felony. (Dkt. No. 15-5 at 22-30.) During her plea allocution, Petitioner admitted that she "agreed to confer a benefit upon" Murphy and that she sought to influence Murphy as a witness in a family court proceeding. *Id.* at 29. The plea neither required Petitioner to admit she orchestrated the October 16, 2005, attack at the football game or that Jeker was the assailant. *See id.* at 23-36.

Notably, the plea was in satisfaction of, *inter alia*, any charges regarding her fabrication of testimony Petitioner provided in a 2005 child-custody deposition, during which she described Jerker as the assailant and denied knowing Murphy and Schmid. (*See* Dkt. No. 15-3 at 59.) As promised, Petitioner was sentenced to five years of probation. (Dkt. No. 15-5 at 29-30.)

## B. The 2011 Perjury Conviction

### 1. The Perjured Testimony

On September 19, 2007, during a subsequent deposition regarding a custody modification commenced by Petitioner in July 2007, Petitioner provided sworn testimony regarding the events

surrounding the October 16, 2005, football game. (Dkt. No. 15-2 at 40-44.) Specifically, she

claimed Jeker attacked her at the football game, she denied meeting Murphy through Hyde, and

she denied meeting Schmid at a Friendly's restaurant in 2005. *Id.* On October 24, 2008,

Petitioner was indicted by a Broome County grand jury (Indictment Number 08-591) with three

counts of perjury in the first degree in violation of Penal Law § 210.15:

> Count One:
> Q: And what did you claim happened in October of 2005?
> A: Well, that Brian [Jeker] attacked me at the Pee Wee
> Football game.
>
> ***
>
> Count Two:
> Q: Isn't it a fact, Mrs. Jeker, that you met [Stephanie
> Murphy] through a friend Kevin Hyde?
> A: No.
>
> ***
>
> Count Three:
> Q: In the fall of 2005, did you meet Megan Schmidt (sic)
> at Friendly's in Endicott, New York?
> A: No.

(Dkt. No. 15-2 at 7-9.)

On April 17, 2009, Petitioner filed an omnibus motion, which included, *inter alia*, a

motion to dismiss the perjury charges on the grounds of (1) insufficient evidence, (2) breach of

the 2007 plea agreement, and (3) in the interest of justice. (Dkt. No. 15-3 at 113-135.) As

relevant here, Petitioner argued the People promised not to prosecute her for alleged perjury

regarding the October 16, 2005, assault, and such promises included any statements made after

the guilty plea. (Dkt. No. 15-3 at 30-31, 115.) Specifically, Petitioner argued as part of her plea

agreement, the People led her to reasonably conclude she would not face any criminal charges

related to the October 16, 2005, assault as she pursued her ongoing litigation in Family Court. *Id*. at 118-19.

By Decision and Order dated September 3, 2009, the County Court (1) dismissed the first count of the indictment as legally insufficient, (2) denied the motion to dismiss the remaining two counts of perjury in the interest of justice, and (3) ordered a hearing in connection with Petitioner's claim the People breached the 2007 plea agreement. (Dkt. No. 15-3 at 164-74.[3]) On October 2, 2009, Broome County District Attorney Gerald Mollen, Senior Assistant District Attorney Stephen Ferri, Jr., and Farkas testified concerning their recollection and understanding of the plea negotiations under Indictment Number 06-514. (Dkt. No. 15-5 at 49-54.)

On February 22, 2010, the County Court denied the motion, finding no merit to Petitioner's contention the terms of the 2007 plea permitted her to commit perjury in future custody proceedings. *Id*. at 63. Specifically, County Court Judge Joseph F. Cawley found the 2007 plea minutes were "simply not ambiguous" and it was "implausible that the People, by the disposition would explicitly or implicitly agree that [Petitioner] could testify untruthfully in any subsequent proceeding regarding the [October 16, 2005, football] incident with immunity as to the veracity of that testimony." (Dkt. No. 15-5 at 61, 63.)

2.     <u>The Trial, Verdict, and Sentencing</u>

On October 25, 2010, Petitioner's jury trial commenced before Judge Cerio. (Dkt. No. 15-2 at 198.) On October 25, 2010, Petitioner was found guilty of two counts of perjury in the

---

[3] As to Count One of the Indictment, the County Court found Petitioner's answer "completely true," because "the question asked was not what ***did*** happen in October 2005 at the Pee Wee Football game, but rather what [Petitioner] had ***claime[ed]*** at that time. At the time (and since) [Petitioner] had claimed that she was attacked by Brian Jeker at the Pee Wee football game." (Dkt. No. 15-3 at 168) (emphasis in original).

first degree.  (Dkt. No. 15-2 at 373-374.)  At sentencing, the People sought to have Petitioner sentenced as a second felony offender; Petitioner argued the predicate felony for attempted bribing of witness was unconstitutional for sentencing purposes.  (Dkt. No. 15-2 at 10, 90, 102-03.)  On February 11, 2011, the County Court declined to sentence Petitioner as a second felony offender because "given the unique, fact circumstances" of this case, Judge Cerio had "sufficient doubts" as to whether Petitioner understood the consequences of her 2007 plea.  *Id*. at 171. Thus, Petitioner was sentenced to two concurrent five-year terms of probation.  *Id*. at 192.

3.      The Appeals

On a counseled appeal to the Appellate Division, Petitioner raised the following arguments: (1) wrongful inducement of a previous guilty plea, to wit, a promise not to pursue the perjury charge, (2) lack of materiality of the allegedly perjurous statements, (3) the conviction was against the weight of the evidence, and (4) Petitioner was "victimized by a 'perjury trap.'" (Dkt. No. 15-1.)  The People appealed the County Court's decision declining to sentence Petitioner as a second felony offender.  (Dkt. 15-5 at 2-20.)  Petitioner filed a reply brief.  (Dkt. No. 15-6.)

On October 18, 2012, the Appellate Division affirmed Petitioner's conviction, holding Petitioner's perjured statements were material to the Family Court proceeding in which they were given and the convictions were not against the weight of the evidence.  *Weiss*, 952 N.Y.S.2d at 640-41.  The Appellate Division found no merit to Petitioner's claim she was subjected to a "perjury trap."  *Id*. at 641.

As to the People's appeal, the Appellate Division agreed the "County Court erred in refusing to sentence [Petitioner] as a second felony offender."  *Id*.  In so holding, the Appellate Division held an objective reading of the 2007 plea bargain belied Petitioner's claim that the

7

"circumstances of her plea negotiations and subsequent guilty plea led her to believe that she would be immune from future prosecutions related to any future false statements regarding the circumstances surrounding the 2005 assault." *Id*. at 641-42. Because Petitioner "failed to sustain her burden of demonstrating the unconstitutionality of the plea," the Appellate Division vacated the sentence and remitted the matter to the County Court for resentencing as a second felony offender. *Id*. at 642.

Petitioner sought counseled leave to appeal to the New York Court of Appeals to consider "whether her prior felony conviction for attempted bribing of a witness was unconstitutional for sentencing purposes pursuant to CPL § 400.21, where the People's own sworn testimony following the plea of guilty demonstrated that the plea was not knowing, voluntary, and intelligent." (Dkt. No. 15-8 at 2-3.) The People opposed the application. (Dkt. No. 15-10 at 2-4.) On January 10, 2013, Petitioner's application was denied. *Weiss*, 960 N.Y.S.2d at 358.

4. <u>Resentencing</u>

On February 14, 2013, Petitioner was resentenced as a second felony offender to an indeterminate prison term of two to four years. (Dkt. No. 16 at 1.) Petitioner timely filed this action on March 7, 2013. (Dkt. No. 1.)

## III. STANDARD OF REVIEW

### A. Review of State Court Decisions on the Merits

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States; or (2) was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding. *Cullen*

*v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. §2254(d)(1), (2)); *Premo v. Moore*, 562

U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings"

and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*,

562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 1862 (2010)

(internal quotation marks omitted)). Federal habeas courts must presume that the state courts'

factual findings are correct unless a petitioner rebuts that presumption with "'clear and

convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)). "The

question under AEDPA is not whether a federal court believes the state court's determination

was incorrect but whether that determination was unreasonable - a substantially higher

threshold." *Id*. at 473.

### B.     Exhaustion

An application for a writ of habeas corpus may not be granted until a prisoner has

exhausted all remedies available in state court unless "there is an absence of available State

corrective process" or "circumstances exist that render such process ineffective to protect the

rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(I), (ii). To satisfy the exhaustion

requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion

requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus

petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas

relief in "each appropriate state court (including a state supreme court with powers of

discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v.*

*Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1981))).  The petitioner bears the burden of proving exhaustion.  *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998) (citations omitted).

In this case, Respondent concedes Petitioner's claim that she was improperly sentenced as a second felony offender is exhausted.  (Dkt. No. 16 at 24-25.)  Respondent argues, however, Petitioner did not exhaust her claim that her 2007 conviction for attempted bribing of a witness is itself unconstitutional, and should be vacated.  *Id.*  In response, Petitioner argues she is "seeking vacatur of her recent February 2013 perjury conviction . . . rather than her prior conviction for attempted bribery[.]"  (Dkt. No. 21 at 3.)  Yet she also argues she is entitled to habeas corpus relief "where a wrongly obtained prior conviction is used to enhance the sentence currently being served by the petitioner."  (Dkt. No. 21 at 10-11.)  However, as discussed below, this claim is barred by *Lackawanna Cnty. Dist. Atty. v. Coss*, 532 U.S. 394, 401-02 (2001) (plurality decision), and therefore, this Court lacks jurisdiction over this claim.

## IV.  ANALYSIS

### A.  The 2007 Conviction

A district court may exercise jurisdiction over a petition for habeas relief only if the petitioner is "in custody pursuant to the judgment of a State court" when the petition is filed.  28 U.S.C. § 2254(a); *see Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam); *Ogunwomoju v. United States*, 512 F.3d 69, 75 (2d Cir. 2008) (noting that the "in custody" requirement is jurisdictional).  This statutory language has been interpreted as requiring that a petitioner be "in custody" under the conviction or sentence under attack at the time the petition is filed.  *Maleng*, 490 U.S. at 490-91; *Bomasuto v. Perlman*, 680 F. Supp. 2d 449, 455-46 (S.D.N.Y. 2010).

If a petition is filed after a sentence has been fully served and thus expired, the petitioner is no longer "in custody" pursuant to that conviction and she may not directly challenge it by way of a petition for writ of habeas corpus in federal court. *See Coss*, 532 U.S. at 401-02. The Supreme Court has explicitly ruled that a habeas petitioner does not "remain in custody under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." *Maleng*, 490 U.S. at 492; *Valdez v. Hulihan*, 640 F. Supp. 2d 514, 515 (S.D.N.Y. 2009) (holding that once a petitioner's sentence has expired he or she is no longer "in custody" under that conviction, "even when the possibility exists that the conviction may be used to enhance a future sentence").

According to Petitioner, "it is clear that the use of Petitioner's wrongfully-induced prior guilty plea to enhance her sentence—as was done on February 14, 2013, by Order of the New York State Appellate Division—was, indeed, unconstitutional and must be set aside by this Court[.]" (Dkt. No. 21 at 11.) Petitioner was convicted of attempted bribing of a witness on May 25, 2007, and sentenced to serve five years of probation. (Dkt. No. 15-5a at 29-30.) Petitioner's sentence expired five years later, on May 25, 2012. (Dkt. No. 17.) Since Petitioner's sentence expired in 2012, she was no longer "in custody" within the meaning of § 2254 when she filed this petition in 2013. She cannot, therefore, "bring a federal habeas petition directed solely at" the 2007 conviction. *Coss*, 532 U.S. at 403-04 ("Coss in no longer serving the sentences imposed pursuant to his 1986 convictions, and therefore cannot bring a federal habeas petition directed solely at those convictions."); *Maleng*, 490 U.S. at 491-92 (holding potential use of a conviction to enhance a sentence for a subsequent offense does not suffice to render a person "in custody" of the prior conviction). Accordingly, to the extent the petition can be read

11

to challenge the validity of the 2007 conviction independent of Petitioner's argument it was improperly used to enhance her perjury conviction, this Court is without jurisdiction.

Petitioner was, however, serving an unexpired sentence on her 2011 perjury conviction at the time she filed this petition. The "in custody" requirement for federal habeas jurisdiction is satisfied "when a *pro se* petition, liberally construed, 'can be read as asserting a challenge to a current sentence, as enhanced by an allegedly invalid prior conviction.'" *Williams v. Edwards*, 195 F.3d 95, 96 (2d Cir. 1999) (per curiam) (quoting *Maleng*, 490 U.S. at 493-94) (internal brackets, and citations omitted); *Valdez*, 640 F. Supp. 2d at 516. In other words, Petitioner may indirectly challenge the 2007 conviction on a theory that it was used to enhance her current federal sentence, for which she is "in custody."

Nonetheless, a court may consider an indirect challenge to an expired conviction that has been used as a sentence enhancement only in very limited circumstances. The Supreme Court has held:

> once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Coss*, 532 U.S. at 403-04 (2001). The Supreme Court's majority recognized an exception to this general rule if the petitioner "can demonstrate that his current sentence was enhanced on the basis of a prior conviction that was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment." *Id*. at 404-05. Three Justices recognized two other possible exceptions: (1) a state court unjustifiably refused to rule on a constitutional claim that had been

properly presented or (2) the petitioner presents compelling evidence of actual innocence, which could not have been uncovered in a timely manner. *Id*. at 405 (citations omitted).

In this case, to the extent Petitioner challenges her current sentence for perjury, as enhanced by her 2007 conviction for attempted bribing a witness, the Court may not consider such a request because Petitioner does not satisfy any of the narrow conditions set forth in *Coss*. Indeed, the record establishes Petitioner was represented by counsel at all stages of the 2007 conviction and there is no indication that the state court either refused to rule on a properly presented constitutional claim or that Petitioner has compelling evidence of actual innocence. Thus, Petitioner does not satisfy the "in custody" requirement of § 2254 on her enhanced sentencing claim, and accordingly, this Court is without jurisdiction.

### B. The 2011 Conviction

According to Petitioner, "[b]oth her recent conviction (for perjury), and her sentencing as a second felony offender for that offense, arise from the same issue: in a word, Petitioner was wrongfully induced by state prosecutors to enter a guilty plea to a prior charge with the false representation, in effect, that she would not face precisely the charge for which she has now been convicted and sentenced." (Dkt. No. 21 at 3.[4]) Moreover, and "[w]orse still, thanks to the wrongfully induced plea, [Petitioner] has now been sentenced as a second felony offender under New York law[.]" (Dkt. No. 2 at 3-4.) Petitioner contends "[s]ince the prosecutors led Petitioner

---

[4] To the extent the petition can be construed as raising issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 526 U.S. 216, 221 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law).

into believing they would not prosecute her for continuing to testify about the assault in Family Court—a condition crucial to her guilty plea—it follows that Petitioner's reliance on that promise invalidates her conviction, even on the assumption that the conduct in question was actually illegal." (Dkt. No. 2 at 13; Dkt. No. 21 at 8.) Thus, Petitioner seeks "relief from her sentencing as a repeat felony offender, if not from the conviction itself." (Dkt. No. 21 at 2.[5])

On the People's appeal, the Appellate Division held the County Court erred in rejecting the People's application to sentence Petitioner as a second felony offender because Petitioner failed to sustain her burden of demonstrating the unconstitutionality of the 2007 conviction. *Weiss*, 952 N.Y.S.2d at 642. As set forth above, on habeas review, the court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Under New York law, a defendant may be subject to an enhanced sentence if they commit a second felony within a 10-year period of a prior felony conviction. *See* N.Y. Penal Law § 70.06 (McKinney (2016)). Once the People establish that a defendant has a qualifying felony conviction, the defendant must prove that the prior conviction was unconstitutionally obtained to avoid sentencing as a second felony offender. N.Y. Crim. Proc. § 400.21 (McKinney

---

[5]  In general, a state prisoner's challenge to her sentence is not cognizable on habeas review, provided the sentence falls within the statutorily mandated guidelines of the state. *McCool v. New York*, 29 F.Supp.2d 151, 161-62 (W.D.N.Y. 1998) (citing *United States v. Addonizio*, 442 U.S. 178, 186 (1979), *Townsend v. Burke*, 334 U.S. 736, 741, (1948)). The Supreme Court has established an exception to this rule where the sentence is based "upon misinformation of constitutional magnitude," or upon "a foundation so extensively and materially false, which the prisoner had no opportunity to correct . . . that [it] renders the proceedings lacking in due process." *United States v. Tucker*, 404 U.S. 443, 447 (1972), *Townsend*, 334 U.S. at 741.

(2005)). Here, as the Appellate Division correctly found, there was no dispute the People met their initial burden of establishing Petitioner's prior 2007 felony conviction for attempted bribing of a witness. *Weiss*, 952 N.Y.S.2d at 641; *see* Dkt. No. 15-2 at 10. Petitioner contended, however, the predicate felony for attempted bribing of witness was unconstitutional for sentencing purposes. (Dkt. No. 15-1 at 8.) Specifically, Petitioner argued based on the assertions made by the People during the plea negotiations, she was led her to believe she would be immune from future prosecutions related to any future false statements regarding the circumstances surrounding the 2005 assault. (Dkt. No. 15-3 at 118-19.) As discussed above, both Judge Cawley and the Appellate Division rejected this argument. *Weiss*, 952 N.Y.S.2d at 641; *see* Dkt. No. 15-5 at 61- 63.

At sentencing, however, Judge Cerio framed the issue as whether Petitioner "understood the consequences of her plea of guilty" on May 27, 2007. (Dkt. No. 15-2 at 159.) As an intial matter, Judge Cerio noted:

> I want to make very clear that I take no issue with Judge Cawley's decision of February 22, 2010. I think he's absolutely correct, there was no ambiguity here with respect to the plea agreement. Further, I take no issue with Judge Mathews' plea and sentence that had occurred on May 27, [2007]. However, I have reviewed this, perhaps in a different light than that which was asked of Judges Cawley and Mathews.

(Dkt. No. 15-2 at 159.) *Id*. at 160-62.

In so holding, Judge Cerio noted the "specific efforts" made by Petitioner and the People to tailor the plea allocution so Petitioner would not have to admit "that there was a lie that had been perpetrated," and thus, Petitioner could "continue to litigate the issue of custody, . . . continue to take the posture that the assault incident where she alleged that Mr. Jeker had assaulted her, had, in fact, occurred." *Id*. at 170. Yet, Judge Cerio noted the plea colloquy was

silent as to the effect of Petitioner's plea on future criminal prosecutions. *Id*. at 170-71.

Although recognizing that "is usually considered to be a collateral consequence rather than any direct consequence, given the unique fact circumstances of this case, the future conduct and the consequences that may flow from such conduct were more of a direct consequence than a collateral consequence." *Id*. at 171. As a result, Judge Cerio declined to sentence Petitioner as a second felony offender. *Id*.

The Appellate Division disagreed, holding the County Court erred in refusing to sentence Petitioner as a second felony offender, because Petitioner "failed to sustain her burden of demonstrating the unconstitutionality" of her 2007 conviction. *Weiss*, 952 N.Y.S.2d at 641.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences.") (internal quotation marks and citation omitted); *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) ("A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its 'direct consequences.'")

If a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration," that promise "must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 261-62 (1971). Thus, a violation of the terms of a plea agreement "can render a defendant's plea involuntary and thereby undermine the constitutional validity of a conviction based upon the plea." *Paradiso v. United States*, 689

F.2d 28, 30-31 (2d Cir. 1982) (citation omitted). The acceptance of a guilty plea, "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Id*. (quoting *Santobello*, 404 U.S. at 262). In determining what is "reasonably due," in an action alleging violation of a plea agreement, "the dispositive question is what the parties to this plea agreement reasonably understood to be the terms of the agreement." *Id*. (citations omitted). Under this standard, a petitioner has the burden of demonstrating that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justified her mistaken impression. *Mosher v. Lavallee*, 491 F.2d at 1346, 1348 (2d Cir. 1974), *cert. denied*, 416 U.S. 906 (1974).

  The record in this case supports the Appellate Division's ruling Petitioner failed to show the plea was invalid because she believed she would be immune from future prosecutions regarding perjured statements involving the October 2005 assault. In the course of the plea proceeding, Petitioner's counsel stated, in pertinent part:

> there are other matters under investigation in this County with regard to [Petitioner]. As part of this arrangement, those matters would not be prosecuted, that is a guarantee I'm receiving from the District Attorney. Obviously, this does not cover any matters that are not known to the District Attorney or police department, but these matters include the following –I'm reading from Mr. Ferri's letter to me dated January 10, 2007: [Petitioner] is currently facing a violation of a conditional discharge in the City of Binghamton for offering a false instrument for filing in the second degree, that's a prior conviction, she is under investigation for perjury counts for testimony regarding, I believe, the October 16, 2005, incident in which it is alleged that she – well, it hadn't been alleged formally—but the alleged allegation, informal allegation is that she made up an assault charge against her husband. This is something that's not charged here, but we've discussed it before.
>
> The other matters under investigation are possible charges arising from unlawful practices of psychiatry or psychology or counseling

> services[.]  Mr. Ferri says these will not be prosecuted in the future
> once this plea is formalized.

(Dkt. No. 15-5 at 24-25.)

At the plea proceeding, Petitioner stated that beyond what was discussed in the courtroom that day, she was not promised anything else to plead guilty, she considered herself guilty of the crime, she was satisfied with her attorney and the advice she was given, and she was not forced or pressured in any way to plead guilty.  (Dkt. No. 15-3 at 81.)  Such statements made by a defendant during a plea colloquy constitute a "formidable barrier" that cannot be easily overcome in subsequent collateral proceedings because "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

As set forth above, Petitioner first raised breach of the 2007 plea agreement in her motion to dismiss the perjury indictment.  (Dkt. No. 15-3 at 113-15.)  While acknowledging the extensive negotiations leading up to the plea, Judge Cawley stated "[w]here a fair reading of the plea bargain compels but one interpretation, [Petitioner's] subjective misunderstanding of it does not provide a reason to dismiss the instant indictment."  *Id*. at 62.  Indeed, "[c]ompliance with a plea bargain is to be tested against an objective reading of the bargain, and not against a defendant's subjective interpretation thereof[.]"  *Id*. at 63.  (citation omitted).  Lastly, Judge Cawley stated that Petitioner's "position would provide her with immunity for future illegal conduct.  Such a determination is, in this court's opinion, untenable.  Moreover, it is unsupported by the plain language of the record."  *Id*.

At sentencing, however, Judge Cerio noted the plea "allocution is silent as to the effect of the felony plea on any future conviction" and based upon the "unique circumstances of this case" considered such consequence to be "more of a direct consequence than a collateral

consequence." (Dkt. No. 15-5 at 170-71.) On the People's appeal, the Appellate Division

squarely rejected this argument: "Nor was [Petitioner's] plea rendered invalid due to the fact

that she was not specifically informed that, as a consequence of her plea, she could be

subsequently prosecuted for any future perjurous statements made regarding the 2005 assault."

*Weiss*, 952 N.Y.S.2d at 642.

The New York Court of Appeals has "defined a direct consequence of a plea as one

which has a definite, immediate and largely automatic effect on defendant's punishment. Put

another way, direct consequences consist of the core components of a defendant's sentence: a

term of probation or imprisonment, a term of post-release supervision, a fine." *People v. Monk*,

21 N.Y.3d 27, 322-33 (2013) (citations omitted). "A plea of guilty is considered voluntary and

intelligent if the defendant enters the plea with full awareness of its 'direct consequences.'"

*Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) (quoting *Brady*, 397 U.S. at 755). As the

record reflects, Petitioner was excused only for the crimes under investigation at the time she

pleaded guilty. The Appellate Division held:

> [a]lthough the record reveals that the People were aware at the
> time of the plea that [Petitioner] was intent on continuing to litigate
> her custody battle, that the 2005 alleged assault would necessarily
> be an issue raised in those proceedings and that [petitioner] would
> likely challenge the testimony of Murphy and Schmid, there is
> nothing to suggest that [Petitioner] would not be prosecuted for
> any subsequent false testimony in that regard or that her plea was
> otherwise in satisfaction of crimes not yet committed.

*Weiss*, 952 N.Y.S.2d at 641.

Here, because the Appellate Division held the terms of the 2007 plea could not be

understood as covering future crimes, Petitioner failed to demonstrate the 2007 conviction was

unconstitutionally obtained. As the "last reasoned decision" by the state court, the Appellate

Division's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006). At sentencing, Judge Cerio failed to view the plea terms objectively, thus, his reasoning does not constitute the clear and convincing showing necessary to rebut the presumption of correctness attached to the Appellate Division's findings. *See* 29 U.S.C. § 2254(e)(1).

In light of the above, the Appellate Division's decision the County Court erred in refusing to sentence Petitioner as a second felony offender was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; nor was Petitioner's perjury conviction itself unconstitutionally obtained where the record supports Petitioner's guilty plea was intelligently entered and validly allowed for her subsequent prosecution for post-plea crimes of perjury.

**WHEREFORE**, based on the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**. The Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) (2006) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, the Court recommends that no certificate of appealability issue with respect to any of Petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984

F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir.1989)); 28

U.S.C. § 636(b) (1); Fed. R. Civ. P. 72.


Dated: September 12, 2016
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge